## AFFIDAVIT

I, Glen Barton, III, Special Agent with the Bureau of Alcohol, Tobacco, and Firearms (ATF), United States Department of Justice, having been duly sworn, depose and state that:

## INTRODUCTION

1. Your affiant is a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), and has served in that capacity since March 27, 2023. Your affiant is currently assigned to the Norfolk Field Office and charged with investigating violations of federal firearms, explosives, and arson laws. Your affiant is a graduate of both the Criminal Investigator Training Program and the ATF National Academy. At the ATF National Academy, your affiant received special training in firearms, arson, explosives, and narcotic-related crimes.

    a. Your Affiant began his law enforcement career with the City of Mobile, Alabama Police Department in June 2012. Your Affiant graduated from the Mobile Police Department law enforcement academy in October 2012. During that training, your Affiant received basic law enforcement training to include training in illegal drug identification and enforcement of drug laws. During your Affiant's employment with the City of Mobile Police Department, your Affiant received continued training on illegal drugs to include; the way they are packaged, transported, sold, and used.

    b. During your Affiant's career with the City of Mobile Police Department, your Affiant worked as a Patrol Officer on day and evening shifts from October 2012 to March 2014. While assigned to these positions, your Affiant conducted drug enforcement and investigations throughout the City of Mobile. Your Affiant was assigned as a Detective to the General Investigations Unit from March 2014 to April

      2015 where your Affiant conducted property crime related investigations. From April 2015 to November 2015, your Affiant was assigned as a Detective to the Financial Crimes Unit. During that time in Financial Crimes, your Affiant was tasked to investigate crimes involving identity theft, fraudulent use of credit cards, counterfeit check cashing organizations and counterfeit currency operations. From November 2015 until June 2017, your affiant was assigned as a Detective to the Assaults, Sex Crimes and Missing Persons Unit. Your Affiant conducted numerous violent crime investigations while in that unit. The investigations ranged from Attempted Murder, Rape, Kidnapping, Robbery and Domestic Violence related offenses. From June 2017 until March 2023, your affiant was assigned as a Detective to the Homicide Unit. Your Affiant conducted noumerous homicide and death-related investigations while in that unit.

  c. Your Affiant has interviewed numerous sources of criminal information and arrested subjects who have committed violent crimes. During these investigations, subjects have provided information on the way drugs are used, packaged, sold and/or distributed in the City of Mobile and elsewhere in the United States of America. Your Affiant has organized and assisted with numerous operations which resulted in arrests of suspects who have committed homicides, violent crimes, sex offenses, financial crimes offenses, drug offenses and weapons violations.

2.   The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested criminal complaint and arrest warrant and does not set forth all my knowledge about this matter.

## II. PROBABLE CAUSE

3.  On November 16, 2024, Officer Michael Cahill, with the Virginia Beach Police Department (VBPD), conducted a traffic stop of a Hyundai Sante Fe at I-264 East and Parks Avenue in the City of Virginia Beach, located in the Eastern District of Virginia. Officer Cahill observed the Hyundai operating with an expired inspection, and he also discovered that the registered owner had an outstanding warrant for his arrest.

4.  Officer Cahill activated the lights and sirens of his police vehicle and observed the Hyundai pull onto Parks Avenue and come to a stop at the red light at Parks Avenue and 22nd Street.

5.  Officer Cahill then observed the driver of the vehicle stick his head out of the driver's door window and state that he was going to pull into the BP gas station on the corner because his vehicle was overheating.

6.  Officer Cahill exited his vehicle and told the driver of the Hyundai to put the vehicle in park and to turn the vehicle off. However, despite those commands, the driver of the vehicle accelerated hard enough to "chirp" the tires and sped off into the gas station parking lot.

7.  Officer Cahill pulled into the gas station parking lot behind the Hyundai and observed the driver exit his vehicle. Officer Cahill exited his vehicle and gave the driver commands to get back into the Hyundai numerous times. However, the driver continued to refuse his commands. Officer Cahill, along with an assisting officer, then attempted to detain the driver. However, the driver tensed up and began to pull away from Officer Cahill. As Officer Cahill continued to attempt to place the driver in handcuffs, a brief struggle ensued.

8. Officer Cahill gained control of the driver by taking him to the ground with assistance from other responding officers. He was able to get the driver handcuffed before placing him in the back seat of his patrol vehicle.

9. Officer Cahill was able to identify the driver of the vehicle as Zackiah Wolvern Salone (SALONE). Officer Cahill ran a check on SALONE in a law enforcement database and found that he was a convicted felon.

10. Officer Cahill approached the Hyundai and observed approximately .8 grams of suspected cocaine, in plain view, within the driver's side door handle. Officer Cahill then collected the small clear plastic bag containing the suspected cocaine.

11. Officer Cahill then conducted an inventory search of the vehicle and recovered an empty gun holster located on the driver's seat. He then opened the center console and located two firearms inside of the console, later identified as a Taurus .40 caliber handgun, S/N: SEN57375 and an SCCY 9mm handgun, S/N: 916092.

12. SALONE was placed under arrest and transported to Virginia Beach General Hospital for minor injuries that he sustained during the struggle. After treatment, he was released back into Officer Cahill's custody.

13. SALONE was advised of his *Miranda* warnings and, when asked if he understood his rights, he stated "Yes." SALONE told Officer Cahill that the vehicle he was driving was his boss' vehicle and that he was nervous because he had just taken two guns from his biker friends and that the firearms were in the vehicle.

14. SALONE stated that the firearms that were in the vehicle belonged to his friends and that he took the firearms from them earlier in the day. SALONE stated that his friends drive motorcycles and that they were drinking and doing drugs. SALONE admitted to using cocaine around 1700 hours before going out with his girlfriend. SALONE admitted that the cocaine he

used at 1700 hours was the same cocaine that was located in the driver's door of the vehicle in the plastic baggie.

15. SALONE admitted to having a bag inside his vehicle that contained several smaller plastic baggies along with a black scale. SALONE stated that the reason he has the individual baggies is to place the cocaine he buys off the street into the bags for easy use. SALONE was asked if he would give consent to Officer Cahill for DNA collection from his cheek. SALONE stated, "Yes I have no reason not to, my DNA is on both the guns, you ain't got to worry about that." SALONE then stated, "I put them in my hands, I put them in my hands."

16. Your affiant conducted a criminal history check and found SALONE had previously been convicted of a felony offense punishable by imprisonment for a term exceeding one (1) year. I also confirmed that SALONE's right to possess a firearm had not been restored.

17. Your affiant confirmed that both firearms recovered from the vehicle SALONE had been driving, the Taurus .40 caliber handgun, S/N: SEN57375 and the SCCY 9mm handgun, S/N: 916092, are "firearms" as defined by federal law. I also confirmed that neither firearm was manufactured in the Commonwealth of Virginia. Therefore, both firearms would have been shipped or transported in interstate or international commerce prior to their recovery in the Commonwealth of Virginia.

### III. CONCLUSION

Based on the facts contained herein, combined with the training and experience of the investigative team, I conclude that there is probable cause to believe that Zackiah Wolvern Salone did knowingly and intentionally commit the following offense in the Eastern District of Virginia on November 16, 2024: Possession of a Firearm by a Convicted Felon, in violation of Title 18, United States Code, Sections 922(g)(1) & 924(a)(8), and I request that the Court issue a Criminal

Complaint for this offense. I further request that the Court authorize and issue an arrest warrant for Zackiah Wolvern Salone for this offense.

Further your affiant sayeth naught.

_____
Glenn Lee Barton III, Special Agent
Bureau of Alcohol, Tobacco, and Firearms (ATF)

Sworn and subscribed to before me this 28th day of April 2025.

_____
UNITED STATES MAGISTRATE JUDGE

Read and Reviewed:

_____
Marc W. West
Special Assistant United States Attorney